### DONOUGH et v MANSFIELD TELEPHONE CO

Ohio Appeals, 5th Dist, Richland Co

No 509. Decided Jan 20, 1937

W. H. McClellan, for appellees.

Henkel & Gongwer, Mansfield, for appellant.

## OPINION

By LEMERT, PJ.

This cause comes into this court upon an appeal from the Common Pleas Court of Richland County, Ohio. The order appealed from is the granting of a perpetual injunction as prayed for in the petition.

A brief statement of the facts are as follows: The appellees are the owners of a tract of land through which runs a public highway. The appellant, within the boundaries of the appellees land and within the limits of said highway, erected poles, wires and fixtures as a part of its telephone system. The poles, wires and fixtures were erected without the consent of and without compensation to the appellees.

In the construction of said telephone line the appellant injured shade trees of the appellees, which are within the limits of the highway, and the presence of the poles, wires, and fixtures in close proximity to the trees threatens their future development. The poles, wires and fixtures constitute a material obstruction to the use of the appellee's land, to-wit, in hauling crops from the fields to the barn and in digging gravel from a pit on the west side of the farm, and cause an obstruction to the entrance and exit to the buildings on said farm by erecting and putting poles in the driveway.

The appellant in the instant case makes the claim that the rights of telephone companies are secondary only to the use of the public, and that the rights of abutting owners are subordinate to the rights granted to telephone companies, and they further contend that telephone companies have a right to construct lines upon the public highway by legislative authority.

We note that §§9170, 9180, and 9191 GC grant the use of highways to telephone companies for the construction and maintenance of necessary poles, wires, abutments, etc., so long as they do not incommode the public in the use thereof.

We note from the record, on page 4, the following:

"Q. What is there between the highway and the houses?

A. Well, there is a pole, a naked pole, nothing to it, an electric light pole and a telephone pole, and a mail box all in a cluster.

Q. Is there anything else between the highway and the road?

A. Telephone wires.

Q. Do you have a yard in front of the house?

A. Yes, sir.

Q. Do you keep this yard mowed?

A. Clear to the hard surface.

Q. What, if anything, is there—you have two yards, a yard in front of each house, do you?

A. Yes.

Q. Take the lower house, what if anything, is there there in the yard, between the yard and the road?

A. Two trees and a telephone pole.

Q. What kind of trees are these?

A. Maple.

Q. Can you tell how big the trees are?

A. Probably two feet in diameter.

Q. How tall are they?

A. From 60 to 70 feet.

Q. Are these young trees or old trees?

A. They are not very old trees; they are in a growing condition.

Q. Did you notice the appearance and condition of these trees prior to March 21st of this year?

A. Yes, sir.

Q. Can you describe the condition and appearance of these trees?

A. They were in a growing condition, a healthy looking condition.

Q. Did you notice the appearance of these trees since the telephone line has been constructed?

A. Yes.

Q. What if any, difference did you notice in the trees?

A. The limbs were all broken up and skinned up, and some pulled off.

Q. Did you notice the roots of the trees?

A. I found two roots laying around there after the telephone company went through.

Q. Can you describe the location of these trees to the nearest telephone pole?

A. Six feet to the base of the roots.

Q. How do you know this?

A. Because I measured it."

Again quoting from the record, on page 8:

"Q. Is there any telephone pole or wires in front of the lower house?

A. Yes.

Q. Is there any pole in front of the new house where you live?

A. Yes.

Q. Is there any pole in front of any other buildings along there?

A. There is a pole in the driveway of the barnyard.

Q. Can you describe the location of any telephone pole with reference to this driveway?

A. There is one right in the driveway.

Q. Do you use this driveway to haul your crops into the barn?

A. No, sir.

Q. What do you use this driveway for?

A. Oh, we do use it from the south side, and go up through and make a turn to get into the barn.

Q. This telephone pole is right in the middle of the driveway?

A. Yes, sir."

With the foregoing record before us we are of the opinion that the case at bar comes squarely within the rule laid down in The Ohio Bell Telephone Co. v The Watson Co., 112 Oh St 385, wherein the Supreme Court held,

"1st: In this state the fee to the country highway is in the abutting owner and the public has only the right of improvement thereof and uninterrupted travel thereover.

"2nd: An owner of land abutting upon a country highway whose title extends to the center of the road along the line of which are located shade trees, has a property right in such trees and the same may not be interfered with unless by consent of such owner or first making compensation according to law.

"3rd: The erection and maintenance of telephone poles and wires within the limits of a country highway is an additional burden upon the easement and an invasion of property rights of the abutting owner for which he is entitled to compensation."

Whatever may be the law of other states we are of the opinion that the law of Ohio upon this point has not been changed. The construction and maintenance of telephone lines upon a public highway creates an ad-

492

ditional burden upon the real estate of an abutting owner. It is a continuing interference with his property rights against which he is entitled to an injunction ordering the cause of such interference removed.

We are therefore of the opinion that the finding and judgment of the court below was correct and it follows that the same judgment will be rendered in this court as was rendered in the court below.

Motion for new trial, if filed, is overruled. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.